```
         IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MONTANA
                   MISSOULA DIVISION
      _____

RICHARD A. WELLS,
                                      CV 06-32-M-DWM-JCL
              Plaintiff,

     vs.
                                      FINDINGS AND RECOMMENDATION
                                      OF UNITED STATES
                                      MAGISTRATE JUDGE
RELIANCE STANDARD LIFE
INSURANCE COMPANY,

              Defendant.
      _____
```

Plaintiff Richard Wells commenced this action seeking judicial review of Defendant's decision terminating his long-term disability benefits. He alleges that Defendant Reliance Standard Life Insurance Company wrongfully terminated his benefits in violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.*

The parties have filed cross-motions for summary judgment, and have submitted this case for decision based upon the administrative record and their respective briefs. Having considered those briefs and the materials of record, the Court enters the following:

ORDER/ Page 1

**RECOMMENDATION**

**IT IS RECOMMENDED** that the Defendant's motion for summary judgment be **DENIED,** and the Plaintiff's motion for summary judgment be **GRANTED** to the extent that this case should be **REMANDED** for further proceedings consistent with this opinion.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DONE and DATED this 11th day of January, 2007.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

**RATIONALE**

**A.  Background**

Richard Wells ("Dr. Wells") is an osteopathic physician who was employed by the Clark Fork Valley Hospital ("Hospital") from November 2003 until March 2004, when he stopped working due to severe lower back and left leg pain.  AR 377-380; 571.  Defendant Reliance Standard Life Insurance Company ("Reliance") insures a group long term disability insurance policy established and

maintained by the Hospital as part of its employee benefit plan ("the Plan"). AR 341-375. Dr. Wells injured his back in February 2004, and applied for long term disability benefits under the Plan some three months later. AR 382-83; 571. Reliance approved Dr. Wells's claim on October 19, 2004, and he continued to receive benefits under the Plan until February 2005. AR 16-18; 130-32. Reliance terminated Dr. Wells's benefits by way of a letter dated February 7, 2005, on the basis that he was once again capable of performing his "regular occupation," as evidenced by the fact that he "continue[d] to perform [his] previous occupation on a full-time basis." AR 16-18.

Dr. Wells appealed Reliance's initial decision terminating his benefits, arguing that Reliance had failed to investigate whether he was in fact capable of working the hours he aspired to. AR 3-6. Dr. Wells indeed claimed that, despite his efforts, he found himself unable "to perform anywhere near a full-time practice," and remained disabled under the terms of the Plan. AR 4-5.

In May 2005, after conducting surveillance activities and reviewing the medical records, Reliance issued its final decision upholding the termination of Dr. Wells's long term disability benefits. AR 246-49. Having thus exhausted his administrative remedies, Dr. Wells commenced this action for judicial review.

**B. Legal Standards**

   **1. Summary Judgment**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c), Fed. R. Civ. P.; *see also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  On a motion for summary judgment, this Court must determine whether a fair-minded jury could return a verdict for the nonmoving party. *Id*. at 252.

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party has met his initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but... must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, at 248.

## 2. Standard of Review

ERISA provides Dr. Wells, as a plan beneficiary, with the right to judicial review of the plan administrator's decision terminating his long-term disability benefits.  29 U.S.C. §§ 1132(a)(1)(B).  The Ninth Circuit has recently clarified the standard of review applicable to administrator determinations under ERISA.  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006).  Under *Abatie*, the court reviews such determinations for abuse of discretion "whenever an ERISA plan grants discretion to the plan administrator," but that review must be "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Abatie*, 458 F.3d at 967.  "This standard applies to the kind of inherent conflict that exists when a plan administrator both administers the plan and funds it, as well as to other forms of conflict."  *Abatie*, 458 F.3d at 967.

Here, the parties agree that the Plan grants Reliance the discretionary authority to determine Dr. Wells's eligibility for disability benefits.  Order, 3 (Aug. 1, 2006) (stipulation of law (b)).  The parties likewise agree that a structural conflict exists because Reliance both administers the Plan and funds it.  Def.'s Memo. in Support, 6 (Nov. 10, 2006).  This Court must thus review Reliance's decision terminating Dr. Wells's disability benefits for an abuse of discretion, "informed by the nature,

extent, and effect of the decision-making process of" this structural conflict, and any other "conflict of interest that may appear in the record." *Abatie*, 458 F.3d at 967; Pl.'s Memo. in Support, 2 (Nov. 30, 2006) (stating that this is the applicable standard of review); Def.'s Memo. in Support, 6-7 (Nov. 10, 2006).

The "district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage." *Abatie*, 458 F.3d at 968.  Where a structural conflict of interest exists, but is not accompanied, "for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history," the court may view the administrator's decision with a low level of skepticism.  *Abatie*, 458 F.3d at 968.  In contrast, the "court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record."  *Abatie*, 458 F.3d at 968-69 (citations omitted).

Although the parties agree that the abuse of discretion standard of review applies, they dispute how that standard is to

be applied under the facts and circumstances in this case. Reliance does not dispute that a structural conflict exists because it both administers the plan and funds it, but contends that under *Abatie* such a technical conflict should have little effect on the level of skepticism with which this Court is to view its decision terminating benefits. Dr. Wells, in contrast, takes the position that this Court should view Reliance's decision with greater skepticism for a number of reasons and maintains that Reliance indeed abused its discretion.

For example, Dr. Wells argues that various procedural irregularities justify a higher level of scrutiny in this case. First, he points to the fact that Reliance stated in its denial letters that it was looking to the Dictionary of Occupational Titles to define his "regular occupation," but notes that the principal claims handler agreed at her deposition that the plan "focused on" how Dr. Wells's existing job was "normally performed at Clark Fork Valley Hospital." Pls.'s State. Genuine Issues, Exh. 2, Depo. Tiffany Dickerson, p. 30. According to Dr. Wells, the Court should give less deference to Reliance's decision in light of this discrepancy. Even assuming those statement are actually discrepant, it is clear from Reliance's written decisions that it looked to the DOT to define Dr. Wells's regular occupation. The Court will nevertheless bear the alleged discrepancy in mind when reviewing Reliance's decision for abuse

of discretion, but finds it does not substantially affect the amount of deference due.

Dr. Wells contends that an additional "procedural irregularity occurred when Reliance Standard failed to make a determination within 60 days of the filing of the claim." Pl.'s Memo. in Support, 11 (Nov. 30, 2006). Dr. Wells does not specify the length of the alleged delay, however, or explain how it prejudiced him in any way. Without such a showing, this alleged procedural irregularity has little effect on the deference due Reliance's decision.

Dr. Wells next maintains that Reliance failed to provide him with a December 30, 2004, vocational evaluation report and a physical capacities questionnaire completed by treating physician Dr. Chandler on January 10, 2005. As Reliance notes, however, in September 2004 it provided Dr. Wells with a copy of his entire file upon his request. AR 141. Reliance stated in its initial denial letter that it would provide him with "copies of all document, records and/or other information relevant to [his] claim for benefits" upon his request. AR 18. Dr. Wells does not indicate whether he ever requested additional documents, and fails to point to any authority that would require Reliance to provide additional documents in the absence of such a request.

In sum, any procedural irregularities that occurred do not shift the standard of review in this case, but are simply factors for this court to consider in determining whether Reliance abused

ORDER/ Page 8

it discretion. *Abatie*, 458 F.3d at 973 (noting that "[a] procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion.")

Finally, Dr. Wells argues that Reliance has a demonstrated history of parsimonious claims handling, thereby justifying a higher level of scrutiny pursuant to *Abatie*. The Ninth Circuit indeed noted in *Abatie* that "a parsimonious claims-granting history" is one factor for the court to consider in assessing the appropriate level of scrutiny with which to view the administrator's decision. *Abatie*, 458 F.3d at 968. But Dr. Wells has failed to demonstrate any such history here. He points to one unpublished case in which the United States District Court for the District of Idaho held that Reliance had abused its discretion,[1] but this is insufficient to establish a history of parsimonious claims-granting.

Bearing in mind the structural conflict that exists, as well as the minor procedural irregularities noted above, the Court turns now to the question of whether Reliance abused its discretion by terminating Dr. Wells's benefits. "An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the

---

[1] *Wirries v. Reliance Standard Life Ins. Co.*, 2005 WL 2128682 (D. Idaho 2005).

ORDER/ Page 9

plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bell/Rozell NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005).

**C.   Discussion**

Dr. Wells primarily argues that Reliance abused its discretion by terminating his benefits based solely on a newspaper advertisement in which he indicated he was opening his own medical practice.  Dr. Wells contends that his attempts to return to the full-time practice of medicine were unsuccessful and that he remained incapable of performing the material duties of his regular occupation on anything more than a part-time basis.  Dr. Wells also contends that Reliance failed to adequately investigate his claim because it did not order an independent medical examination or obtain any additional medical information.  According to Dr. Wells, all of the medical and other evidence of record established that he remained totally disabled under the terms of the Plan, and Reliance abused its discretion by finding otherwise.

Under the terms of the Plan, "totally disabled" and "total disability" mean that:

> (1) during the Elimination period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;

>    (a) "Partially Disabled" and "Partial Disability" mean
>    that as a result of an Injury or Sickness an Insured is
>    capable of performing the material duties of his/her
>    regular occupation on a part-time basis or some of the
>    material duties on a full-time basis.  An Insured who
>    is Partially Disabled will be considered Totally
>    Disabled, except during the elimination Period.

AR 351.

Approximately four months after it had approved his disability claim, Reliance terminated Dr. Wells's benefits on the basis that he was once again capable of performing his "regular occupation," as evidenced by the fact that he "continue[d] to perform [his] previous occupation on a full-time basis."  AR 16-18.  Reliance's determination as set forth in the February 7, 2005, termination letter rested exclusively on what can only be characterized as an ambiguous newspaper advertisement placed by Dr. Wells in which he indicated that he was opening own medical practice as of that date.  AR 17.  That advertisement read as follows:

>    Dear Thompson Falls, Sanders County and Area Residents,
>    I am pleased to let you know that I am finally open and
>    ready to serve you.  Clinic Hours: 1pm -9pm, Monday -
>    Thursday, 1pm - 3pm Friday.  If my OPEN sign is on, I'm in.
>    House Calls: Mornings, please call to make arrangements.
>    Urgent Care: Ready to take care of those cuts scrapes, and
>    if needed, ready to fly you out to specialized care.  Prayer
>    is also available upon request.

AR 32-33.

Reliance did not cite to any medical or other evidence of record to support its decision.  In all likelihood, this was because the medical and vocational evidence in the claims file at

ORDER/ Page 11

that time established that Dr. Wells remained disabled under the terms of the Plan. Indeed, Reliance had approved his claim not even four months earlier based on that evidence. AR 130. The administrative record contains little in the way of medical or vocational evidence pertaining to those four intervening months. What little there is, suggests that Dr. Wells remained disabled. For example, a rehabilitation consultant completed a vocational evaluation report on December 30, 2004, and recommended that Reliance "[o]btain updated medical information regarding [Dr. Wells's] prognosis, treatment, recommendations, and anticipated timeframe/physical capabilities for return to work from Dr. Chandler." AR 416. Reliance apparently followed that recommendation, and sent physical capacities questionnaires to Dr. Wells's two treating physicians. AR 391-94; 449-50. Dr. Howard Chandler indicated on his questionnaire that Dr. Wells was capable only of sedentary work. AR 450-51.

Reliance did not discuss this or any other medical evidence in its initial determination, effectively rejecting Dr. Chandler's opinion without explanation. While it is true that the treating physician rule no longer applies in ERISA cases, an administrator may not arbitrarily refuse to credit a claimant's reliable evidence, including a treating physician's opinion. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Here, Reliance arbitrarily refused to credit Dr. Chandler's opinion on the sole basis of a newspaper advertisement, without

first determining whether Dr. Wells was in fact capable of returning to medical practice. According to Dr. Wells, he found himself incapable of performing "anywhere near a full-time practice" as he had hoped, and would be incapable of performing the on-call duties required of a full-time osteopathic physician. AR 4-5.

Shortly after Reliance's initial decision, Dr. Ross returned his vocational capacities questionnaire. AR 391-94. He indicated that Dr. Wells was capable of working at the medium level of exertion required of an osteopathic physician, but on a limited basis. Specifically, he believed "a graduated return to medical practice is feasible, initially 4 hrs [per day] for 3 days [per week], increasing as tolerated, but very possibly still limited to 4 hr. days, 5 days per week." AR 391-94. Because he believed Dr. Wells would only be able to work on a part-time basis, Dr. Ross's opinion also supports a finding of disability under the terms of the Plan.

Reliance nevertheless rejected Dr. Ross's opinion on the basis that it conflicted with evidence of Dr. Wells's actual activities. AR 248. While Dr. Wells's administrative appeal was pending, and obviously after Reliance had made its determination to terminate benefits, Reliance placed him under surveillance for two days. AR 265-63. The investigator observed Dr. Wells during that period and scheduled a physical examination with him. AR 255-63. The investigator, a non-physician or otherwise medically

ORDER/ Page 13

trained individual, indicated he observed no "external signs of impairment or physical restriction" during that period.  AR 257.  He also reported that Dr. Wells informed him that his "work hours [were] from noon to 7 p.m., Monday through Thursday, noon to 5 p.m. on Friday."  AR 257.  According to Reliance, this is sufficient to establish that Dr. Wells was in fact working at least "33 regularly scheduled hours per week."  AR 248.

While Dr. Wells's statement to the undercover investigator during the course of their scheduled appointment does lend some support to Reliance's position, it does not by itself constitute substantial evidence that Dr. Wells was not disabled.  The two-day surveillance efforts were intermittent at best, and while Dr. Wells told the investigator what his office hours were, whether he actually worked those hours is simply not clear.  Based on the limited observations of the investigator, Reliance concluded that it "appears" Dr. Wells is working on a full-time basis.  AR 248.  Reliance did not attempt to further corroborate its conclusion or provide Dr. Wells the opportunity to refute the conclusion.  Given the lack of medical evidence to establish that Dr. Wells was capable of performing the material duties of his regular occupation as of February 7, 2005, Reliance should have obtained an independent medical examination or otherwise sought to sufficiently confirm the extent to which Dr. Wells was performing his occupation.

This Court is aware that there is no absolute requirement that a Plan administrator obtain an independent medical examination, and the failure to do so is not automatically an abuse of discretion. *See, Wallace v. Reliance Standard Life Ins. Co.*, 318 F.3d 723, 724 (7th Cir. 2003); *Brigham v. Sun Life of Canada*, 317 F.3d 72, 85 (1st Cir. 2003). In light of the structural conflict present here, however, and given the paucity of the medical evidence pertaining to the relevant time frame, Reliance should have obtained an independent medical examination and its failure to do so was an abuse of discretion. *See e.g., Fought v. Unum Life Ins. Co. of America*, 379 F.3d 997, 1015 (10th Cir. 2004) (explaining that "where, as here, a conflict of interest may impede the plan administrator's impartiality, the administrator best promotes the purposes of ERISA by obtaining an independent evaluation").

In support of its argument to the contrary, Reliance also points to a letter Dr. Wells wrote to his patients on May 16, 2005, in which he stated he was closing his practice because his office building had been sold. AR 240. He wrote in closing that while he was "very sad" to leave, an opportunity had arisen in Council, Idaho, and he would "be the only physician there." AR 240. Reliance argues this is additional evidence that Dr. Wells was no longer disabled under the terms of the Plan.

Even assuming Reliance had a copy of this letter when it issued its final decision just three days later, it is significant that the letter says nothing about the hours he intended to work in Idaho.  AR 240.  If his new opportunity involved only part-time work, Dr. Wells could still have been considered disabled under the terms of the Plan.

For these reasons, the Court concludes that Reliance acted arbitrarily and capriciously when it terminated Dr. Wells's long-term disability benefits without first obtaining an independent medical evaluation and/or functional capacity evaluation for purposes of determining whether he was in fact capable of performing the material duties of his regular occupation, or obtaining from Dr. Wells documentary evidence regarding the actual amount of time he was working during the pertinent time frame.[2]

Having so concluded, the Court must next decide whether to "remand the case to the administrator for a renewed evaluation of the claimant's case, or [to] award a retroactive reinstatement of benefits."  *DeGrado v. Jefferson Pilot Financial Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006) (*quoting Cook v. Liberty Life Assur. Co. of Boston*, 320 F.3d 11, 24 (1st Cir. 2003).

---

[2] Because Reliance abused its discretion in that respect, this Court need not address at this juncture Dr. Wells's argument that Reliance abused its discretion by looking to the Dictionary of Occupational Titles to define his "regular occupation," instead of his prior job as actually performed.

"[R]emand, rather than an award of benefits, is more appropriate where a court determines that additional evidence should be considered and it is not 'so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground.'" *Platt v. Walgreen Income Protection Plan for Store,* 2006 WL 3694580 (M.D. Tenn. Dec. 14, 2006) (*quoting Quinn v. Blue Cross & Blue Shield Ass'n.*, 161 F.3d 472, 477 (7th Cir. 1998). *See also Grosz-Salomon v. Paul Revere Life Ins.* Co., 237 F.3d 1154, 1163 (9th Cir. 2001) (recognizing that "retroactive reinstatement of benefits is appropriate in ERISA cases where...'but for [the insurer's] arbitrary and capricious conduct, [the insured] would have continued to receive the benefits" or where "there [was] no evidence in the record to support a termination or denial of benefits.")(*quoting Quinn*, 161 F.3d at 477)); *Caldwell v. Life Ins. Co. of North Am.*, 287 F.3d 1276, 1289 (10th Cir. 2002) (remand proper unless "the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any grounds").

    This Court cannot say that Dr. Wells's case is so clear that it would have been unreasonable for Reliance to terminate his benefits on any basis.  The results of an independent medical examination, and/or evidence regarding actual time spent by Dr. Wells in the performance of his occupation during the pertinent

time frame, may well indicate that Dr. Wells was capable of performing, and did perform, the material duties of his regular occupation, in which case the termination of his benefits would have been appropriate.  This Court thus recommends that the case be remanded to Reliance for consideration of additional evidence bearing upon the issue of whether Dr. Wells was in fact not totally disabled during the pertinent time period.